(No. 25308.—

GOLDIE BUEHLER, Appellee, *vs.* ALBERT C. BUEHLER, Appellant.

*Opinion filed April 10, 1940—Rehearing denied June 5, 1940.*

VERNON R. LOUCKS, for appellant.

JACOB G. GROSSBERG, and HARRY MAY, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

In July, 1935, Goldie Buehler filed a complaint against her husband, Albert C. Buehler, for divorce, charging cruelty; in the alternative she prayed for separate maintenance. There were four children named Carl, Barbara, Albert C., Jr., and Rose Marie, at that time of the respective ages of fourteen, thirteen, twelve, and eight. A decree was entered in favor of plaintiff on the ground of cruelty. Permanent alimony in her favor was fixed at $175 a month and an additional sum of $75 a month for the two children Barbara and Albert C., whose custody was awarded to her. She was given all the household goods and an equal interest with the defendant in the home occupied jointly by the parties. Defendant was also required to pay the taxes and interest on the mortgage on said premises, to be later reimbursed from plaintiff's share when the property was sold. The decree also provided it should not deprive or release the plaintiff's right of dower in any of defendant's property and that jurisdiction was retained over the parties to enforce the decree. Plaintiff's attorney was awarded the sum of $4500 solicitor's fees. The matter of the property and income of the defendant was referred to a master in chancery who held extensive hearings and recommended the amount of alimony and support money later fixed by the court.

The plaintiff appealed to the Appellate Court for the First District and that court increased the amount of solicitor's fees in the sum of $1500, allowed the sum of $1000 as fees to plaintiff's solicitor for services after the decree in

the superior court and including that in the Appellate Court, increased the permanent alimony of the wife to $300 a month and awarded the custody of the youngest child, Rose Marie, to the mother, with support allowance of $75 per month, instead of to the father. From this judgment of the Appellate Court Albert C. Buehler petitioned for and was allowed an appeal to this court and Goldie Buehler assigned cross-error because she was not allowed to amend the prayer of her complaint from divorce to separate maintenance after all the testimony was in.

No authority has been furnished authorizing the Appellate Court to fix solicitors' fees where the wife prosecutes the appeal. The statute, (Ill. Rev. Stat. 1939, chap. 40, par. 16,) provides that in case of an appeal by husband or wife the court in which the decree or order is rendered may require the payment of money for his or her defense pending the appeal. The appeal to the Appellate Court was taken by the wife. The statute does not authorize alimony or solicitors' fees for appellant's solicitor but only for defense pending an appeal. In *Jenkins* v. *Jenkins,* 91 Ill. 167, we held that such an allowance in following an appeal should be made in the circuit court. Section 8 of the Courts act (Ill. Rev. Stat. 1939, chap. 37, par. 32) provides that Appellate Courts may only exercise appellate jurisdiction. The Appellate Court had no authority under the statute to allow solicitor's fees for services on appeal and none existed at common law. Neither was the awarding of the additional sum of $1500 for plaintiff's solicitor's fees justified. When the fees were fixed the parties agreed to leave the matter to the court's own knowledge of the value of the services after plaintiff's attorney testified he spent 700 hours on the case. This was equivalent to 100 full court days to prepare and try a case involving four acts of cruelty and ascertaining the amount of defendant's income. There was a great amount of repetition of practically the same testimony. For instance, the plaintiff was called on four separate occa-

sions before the master and on seven different occasions before the court, either to restate something already testified to or to deny some trivial circumstance brought out in the evidence. The evidence shows the plaintiff and her husband and the three children who testified were upon the witness stand on several separate occasions with very little material addition to their original testimony. Solicitor's fees awarded in cases of this kind are for services necessarily rendered and not merely for time spent in repetition of proof of the same matter. Moreover, the parties, in effect, made the trial judge the arbitrator of the amount of solicitor's fees to be fixed and in so doing he doubtless took into consideration the time that was properly and necessarily expended by plaintiff's attorney. The action of the Appellate Court in increasing the amount of solicitor's fees in the sum of $1500 was not justified.

The superior court awarded the custody of the oldest child and youngest child to appellant. At the time of the decree Rose Marie was ten years of age and at the present time is almost thirteen. No facts appear in this record to indicate that the husband is an improper person to have the custody of any of his children. The oldest and youngest indicated a preference for him and the other two for the mother. Great stress was placed by appellee upon improper conduct of appellant with respect to association with his private secretary. Not only is there no allegation made in the complaint concerning this matter but there is very little proof to substantiate it. It is apparent that at the time of rendering the decision the trial judge thought either party might properly have custody of the children because, on the question of visitation, he directed that the parents so arrange matters that those awarded to the custody of the mother should spend one-third of their time with the father and the same with respect to the children awarded the father, and suggested that the parents arrange such times between themselves. It is well settled that in awarding the custody of a

minor child the best interests of such child must be primarily consulted. (*Miner* v. *Miner*, 11 Ill. 43; *People* v. *Schaedel*, 340 id. 560; *Draper* v. *Draper*, 68 id. 17.) However, there is nothing in this record that indicates that the best interests of Rose Marie will not be just as well served by living with her father as with her mother. Presumably she has been with him for the last three years. A great mass of evidentiary matter in the record goes to trivial matters occurring in almost every household regardless of station in life, and the acts of cruelty proved manifest that they grew out of disagreement between husband and wife over financial and other matters that might well arise in any family. Apparently the trial court went to great lengths to ascertain how the welfare of each child might be best served in making his award of their custody. It is conceded by both parties that the preferences of all the children were consulted and we do not find sufficient in this record to disturb the decree of the superior court. All the parties were before that court and from observation and consultation, as well as from the testimony, it was in a better position to determine that matter than could an appellate tribunal.

The remaining question is that of the Appellate Court's action in increasing the amount of permanent alimony awarded the plaintiff. A separate hearing was had before a master in chancery to determine the financial ability of appellant to pay. An independent firm of auditors selected by plaintiff examined appellant's affairs and it is disclosed that in prior years, for illustration 1930 and 1931, he had a gross income from $25,000 to $35,000, but that during 1935 and 1936 this had become reduced to $12,000 to $13,500. His principal source of income was from two corporations controlled by himself, his mother and three brothers. He was paid a salary which was at times increased by dividends. These companies had suffered great losses as well as reduction in the amount of dividends. Part of these dividends were by contract required to be paid to a trust created for the

support of the mother, who had contributed her large interest in the corporation to the trust. Appellant's income depended almost entirely upon the prosperity of these corporations and his stock, because of being a minority interest, did not have a ready sale value. The interest on the mortgage covering his home was over $1000 a year, taxes on the home about $500 a year, income tax $600 a year, premiums on insurance payable to his estate $1700. In addition to the mortgage indebtedness appellant has a personal indebtedness aggregating almost $30,000, which would require some payments on principal or he would take the risk of losing, by legal process, all income over legal exemptions. It is claimed that appellant has covered up or hidden real assets and income but there is no substantial proof in the record to substantiate this statement. It seems to be based principally upon the fact that in prior years the corporations in which appellant was interested enjoyed great prosperity and with correspondingly greater income to appellant. The undisputed proof was that the salaries of the different members of the Buehler firm are reduced by the amount they spent in entertaining customers, which is considerable. If the award of the Appellate Court were affirmed as it affects the wife and two children it would mean that appellant would be compelled to support himself and educate and support two children and take care of all expenses and pay debts out of a sum little more than awarded the wife. Her rights in his real estate and personal property are preserved by the decree and as it is said in *Harding* v. *Harding,* 180 Ill. 481, she is as much interested as he in the preservation of his estate. The trial court has retained jurisdiction of this cause and if circumstances should change it would be within its power to adjust the alimony and support money in accordance with changed conditions. The superior court heard all the testimony with respect to property and income; it referred the matter to a master in chancery who made an investigation and had before him the audit of a firm of ac-

countants. The defendant was examined at length as to all of his financial matters and it is clear the trial court had a far better opportunity to judge of the amount of alimony and support money that should be awarded than an appellate tribunal could have upon reading a transcript of testimony. The allowance of alimony is to furnish the wife support or contribute to her partial support, and is not to visit punitive damages upon the husband for misconduct. (*Byerly* v. *Byerly,* 363 Ill. 517.) We do not think the record discloses any abuse of discretion by the trial court in fixing the amount of alimony.

Upon cross-appeal, appellee claims the court erred in not permitting the plaintiff to amend her complaint so as to change the prayer of relief from divorce to separate maintenance. All of the testimony was taken before this motion was made. A great amount of time was expended and costs were incurred in trying a lawsuit based upon a prayer of divorce and permanent alimony as relief. It was within the discretion of the superior court to grant or refuse this amendment (*Soltysik* v. *Soltysik,* 317 Ill. 247) and the superior court did not abuse its discretion in refusing to grant the amendment.

It is our conclusion that the judgment of the Appellate Court on the matter of the appeal of appellant, Albert C. Buehler, be reversed and the decree of the superior court affirmed, and that the judgment of the Appellate Court and decree of the superior court with respect to cross-error assigned by Goldie Buehler in this court be affirmed.

*Judgment reversed as to appellant.*
*Judgment affirmed as to cross-error.*